IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CURTIS TYRONE MORGAN,             :

    Plaintiff,                    :

vs.                               :       CIVIL ACTION 10-00665-KD-N

                                  :

CARTER DAVENPORT, et al.,
                                  :

    Defendants.


<u>REPORT AND RECOMMENDATION</u>

    Plaintiff, an Alabama prison inmate proceeding *pro se* and
*in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This
action was referred to the undersigned pursuant to 28 U.S.C. §
636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the
undersigned on the Motion for Summary Judgment of Defendants,
Warden Carter Davenport, Assistant Warden Walter Myers, Captain
Richard Hetrick, Sergeant Walter Richardson and Officer Kelvin
Gibbs (docs. 13, 14);Plaintiff's Opposition thereto (docs. 20,
21)[1], and defendants' supplemental response (doc. 29)[2]. After
consideration of these pleadings and the evidence presented by

---

[1] Although Plaintiff entitled his filing (doc. 20), a "Motion to Amend
Complaint," in light of the contents of the document, it, along with
Plaintiff's Affidavit (doc. 21), is construed as a response in opposition to
Defendants' Motion for Summary Judgment.

[2] On January 3, 2012 the undersigned "directed [defendants] to file a complete
set of Plaintiff's medical records from August 15, 2010, to the present,
including records related to any medical care provided by a private physician
or facility during this time period." (Doc. 28)  The records were produced on
January 17, 2012.  (Doc. 29)

the parties, and for the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed with prejudice. Furthermore, Plaintiff's pending motion for discovery (doc. 19) and motion to add medical records (doc. 28) should hereby, as a result of the adoption of this Report and Recommendation, be denied as MOOT.

## I. FACTS AND PROCEEDINGS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.

On August 15, 2010, while incarcerated at G.K. Fountain Correctional Facility ("Fountain"), Plaintiff was "beaten in the face with a combination lock" by fellow inmate Benjamin Foster, while Plaintiff slept in his assigned bed in the area of G-Dorm at Fountain. (Doc. 1 at 4, 10). According to Plaintiff, the attack occurred as a direct result of "severe overcrowding in open dormitory housing; inadequate staffing and supervision; negligent supervision of correctional officers; inadequate policies, procedures, and practices for critical staffing and security; and failure to enforce such policies, procedures, and practices relating to critical staffing and security that were in effect." (Id. at 10). Plaintiff claims that these issues were well-known to Defendants and that the conditions subjected

Plaintiff to a serious and unreasonable risk of violent injury. (Id.).

Plaintiff claims that his assigned dormitory, G-Dorm, also referred to herein as "Cell Block G," housed approximately 180 or more inmates, and "on a regular basis, a single officer [was] left to guard the overpopulated dormitories." (Id.). Plaintiff contends that the dorms were poorly monitored, and that observation of inmates' activities was "aggravated by rows of double bunk-beds." (Id. at 10-11). Plaintiff further claims that Defendants' actions of allowing the severe overcrowding and inadequate supervision at Fountain constitute deliberate indifference or reckless disregard to Plaintiff's safety. (Doc. 1 at 11).

Plaintiff maintains that as a result of the attack, his nose was broken, and that he suffered "excruciating pain, emotional distress, and continues to suffer chronic pain and instability as well as continuing post traumatic stress." (Id. at 11). Following the assault, Plaintiff was escorted to the Health Care Unit at Fountain, and then transported to the Atmore Community Hospital for further treatment. (Doc. 14, Ex. F at 2).

On December 1, 2010, Plaintiff filed the present § 1983 action against Defendants, Warden Carter Davenport, Assistant Warden Walter Myers, Captain Richard Hetrick, Sergeant Walter

3

Richardson and Officer Kelvin Gibbs, alleging that Defendants violated his Eighth Amendment rights by creating a condition of confinement that posed an imminent danger to the health and welfare of Plaintiff by the failure to secure the area of the his dorm, the G-Dorm.  (Doc. 1 at 5-6, 9-11).  As relief, Plaintiff seeks a declaration that his rights have been violated pursuant to 42 U.S.C. § 1983; an injunction ordering that the Fountain prison population be reduced to its original design capacity, or in the alternative, that the required number of correctional officers be assigned to the dormitories; an award of compensatory damages of $50,000.00; an award of punitive damages of $100,000.00; and an award of attorney's fees and court costs.  (Id. at 12-13).

In their Answer and Special Report, filed on March 3, 2011, Defendants deny that they violated Plaintiff's constitutional rights and assert, *inter alia*, the defenses of absolute and qualified immunity.[3]  (Docs. 13, 14).  Along with their

---

[3]Plaintiff states that he seeks to sue Warden Davenport in both his official and individual capacities.  As to Warden Davenport, and to the extent that Plaintiff seeks to sue any other Defendants in their official capacities, Defendants, as state officials, are entitled to absolute immunity from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).  Furthermore, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory

4

pleadings, Defendants filed exhibits including affidavits, the incident report and Plaintiff's medical records from August 15, 2010 through the present. (Doc. 14, Exs. A-F; Doc. 29, Supplement B).

The records reflect that immediately following the attack on August 15, 2010, at approximately 8:30 a.m., Plaintiff walked to the front of Cell Block G, holding his nose, and advised Officer Gibbs that "[s]ome dude hit me in the nose while I was asleep." (Doc. 14, Ex. F at 2). Officer Gibbs called for assistance, and reported the incident to Sergeant Walter Richardson via radio at approximately 8:35 a.m. (Id.). Sergeant Richardson, along with two additional correctional officers, reported to Cell Block G to assist Officer Gibbs, and one of the officers subsequently escorted Plaintiff to the Health Care Unit. (Id.). Plaintiff was evaluated by Nurse

_____

or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). Until recently, the Court followed the mandatory procedure of Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part, Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. While that procedure is now discretionary, as opposed to mandatory, see Pearson, id., the Court finds it beneficial in this case. Having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.

Jeannie Braham at approximately 8:36 a.m., and due to the nature of his injuries, Plaintiff was placed on the Health Care Unit ward until a doctor could be contacted.  (Id.).

Sergeant Richardson went to the Health Care Unit and questioned Plaintiff regarding the incident, and Plaintiff stated that "[t]his crazy ass dude hit me in my nose while I was asleep. I don't even know that dude." (Id.).  Sergeant Richardson then returned to Cell Block G and determined that inmate Benjamin Foster was responsible for hitting Plaintiff in the nose.  (Id.).  When questioned, fellow inmate Foster claimed that several days before, Plaintiff had put his penis in Foster's mouth while he slept.  (Id.).

Following a medical evaluation of Foster, inmate Foster was escorted to the Segregation Unit.  (Id.).  Foster was charged with rule violation #31, assault on another inmate.  (Id. at 3). Plaintiff, meanwhile, was transported to the Atmore Community Hospital for further healthcare.  (Id. at 2; Doc. 29, Supplement B).

On March 9, 2011, the Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment.  (Doc. 15).  On April 13, 2011, Plaintiff filed a document titled "Motion to Amend Complaint," along with an affidavit, and the Court is considering this a response in

6

opposition to Plaintiff's Motion for Summary Judgment, in light of the nature of the filing.  (Docs. 20, 21).  Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

It is well established that summary judgment is proper under Federal Rule of Civil Procedure 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

> (1) give an opportunity to properly
> support or address the fact;
> (2) consider the fact undisputed for
> purposes of the motion;
> (3) grant summary judgment if the
> motion and supporting materials--
> including the facts considered
> undisputed--show that the movant is
> entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Id. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  See Stabler v. Florida Van Lines, Inc., 2012 WL 32660, *5 (S.D. Ala. 2012) (citing Clark v.

8

Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)).

Summary judgment is proper when, "after an adequate time for

discovery, a party fails to make a showing sufficient to

establish the existence of an essential element of that party's

case." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004)

(citations and internal quotation marks omitted). "[T]here is

no issue for trial unless there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that

party. . . . If the evidence is merely colorable, . . . or is

not significantly probative, . . . summary judgment may be

granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986) (internal citations omitted). "After the nonmoving party

has responded to the motion for summary judgment, the court must

grant summary judgment if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of

law." AGSouth Genetics, LLC v. Cunningham, 2011 WL 1833016, *1-

2 (S.D. Ala. 2011).

### III. DISCUSSION

As noted above, Plaintiff seeks redress pursuant to 42

U.S.C. § 1983 for alleged constitutional deprivations arising out

the conditions of confinement he has been and continues to be

exposed to while incarcerated at Fountain. (Doc. 1). It is

undisputed that on August 15, 2010, Plaintiff was attacked by

9

fellow inmate Benjamin Foster, while Plaintiff was sleeping in his bunk in the G-Dorm, also known herein as Cell Block G. Inmate Foster hit Plaintiff in the nose with a lock, causing Plaintiff to be transported to a local hospital for medical care.  (Doc. 1 at 10; Doc. 14, Ex. F at 2).

Plaintiff alleges that Defendants Davenport, Myers, Hetrick, Richardson and Gibbs violated his Eighth Amendment rights by failing to protect him from an unsafe prison environment because of an overcrowded prison with a shortage of security officers.  (Doc. 1 at 5-6, 9-11).  Plaintiff further claims that Defendants also failed to protect him by allowing an alleged mentally ill inmate, Foster, to be among the general population in G-Dorm.  (Doc. 20 at 1-2).

It is undisputed that Defendants had no prior knowledge that Plaintiff was in any danger of attack from fellow inmate Benjamin Foster, who was solely responsible for the attack on Plaintiff on August 15, 2010.  (Doc. 1).  Even Plaintiff himself stated that "I don't even know that dude."  (Doc. 14, Ex. F at 2).

Section 1983 provides in pertinent part that:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United

> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment provides, in part, that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting "'deliberate indifference' to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994).

In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its
> custody and holds him there against his
> will, the Constitution imposes upon it a
> corresponding duty to assume some
> responsibility for his safety and general
> well-being. . . . The rationale for this
> principle is simple enough: when the State
> by the affirmative exercise of its power so
> restrains an individual's liberty that it
> renders him unable to care for himself, and
> at the same time fails to provide for his
> basic human needs -- *e.g.*, food, clothing,
> shelter, medical care, and reasonable safety
> -- it transgresses the substantive limits on

11

                    state action set by the Eighth Amendment and
                    the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

     In order to prevail on his Eighth Amendment claim,

Plaintiff must prove three elements: "(1) a condition of

confinement that inflicted unnecessary pain or suffering, Rhodes

v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.

2d 59 (1981), (2) the defendant's 'deliberate indifference' to

that condition, Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321,

2327, 115 L. Ed. 2d 271 (1991), and (3) causation, Williams v.

Bennett, 689 F.2d 1370, 1389-90 (11th Cir. 1982)."  LaMarca v.

Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).

     In Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994), the

court described the first two elements as follows:

               An Eighth Amendment claim is said to have
               two components, an objective component,
               which inquires whether the alleged
               wrongdoing was objectively harmful enough to
               establish a constitutional violation, and a
               subjective component, which inquires whether
               the officials acted with a sufficiently
               culpable state of mind.

     The objective component of an Eighth Amendment claim

inquires whether the alleged wrongdoing amounted to the

infliction of "unnecessary pain or suffering upon the prisoner."

LaMarca, 995 F.2d at 1535.  This standard requires that the

alleged deprivation be "objectively, 'sufficiently serious.'"

                                  12

Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. . ., but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).

Correctional officials may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces a "substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. Farmer, 511 U.S. at 828.  However, "not … every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

13

In defining "deliberate indifference," the Supreme Court in
Farmer stated:

> We hold . . . that a prison official cannot
> be found liable under the Eighth Amendment
> for denying an inmate humane conditions of
> confinement unless the official knows of and
> disregards an excessive risk to inmate
> health or safety; the official must both be
> aware of facts from which the inference
> could be drawn that a substantial risk of
> serious harm exists, and he must also draw
> the inference.

Farmer, 511 U.S. at 837.  The court concluded that the
"subjective recklessness" standard of criminal law is the test
for "deliberate indifference" under the Eighth Amendment.  Id. at
839-40.

There is no liability for "an official's failure to
alleviate a significant risk that he should have perceived but
did not. . . ."  Farmer, 511 U.S. at 838.  It is not enough that
a plaintiff proves that the defendants should have known of the
risk; conscious awareness is the key.  See, e.g., Cottrell v.
Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

"'[D]eliberate indifference" entails more than mere
negligence.'"  Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.
2003).

> In interpreting Farmer and Estelle, this
> Court explained in McElligott that
> "deliberate indifference has three
> components: (1) subjective knowledge of a

14

> risk of serious harm; (2) disregard of that
> risk; (3) by conduct that is more than mere
> negligence." McElligott, 182 F.3d at 1255;
> Taylor, 221 F.3d at 1258 (stating that
> defendant must have subjective awareness of
> an "objectively serious need" and that his
> response must constitute "an objectively
> insufficient response to that need").

Id.

Indeed, a prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." Farmer, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id.

Further, "a prison custodian is not the guarantor of a prisoner's safety." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1321 (11th Cir. 2005). Rather, a constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[ ] reasonably to the risk.' … A plaintiff must also show that the constitutional violation caused his injuries." Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) (internal citations omitted).

"The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Farmer, 511 U.S. at 837.  "We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; 'occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable. A prisoner has a right, secured by the eighth ... amendment[ ], to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates[.]'" Purcell, 400 F.3d at 1320-21 (quoting Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973)).  Regarding substantial risk of serious harm, "[t]his objective standard 'embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...," ' but must be balanced against competing penological goals." Id. (quoting LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted).

"[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" Whitley v. Albers, 475 U.S. 312,

16

320 (1986)(quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27)
(1984).

"Prison administrators…should be accorded wide-ranging
deference in the adoption and execution of policies and
practices that in their judgment are needed to preserve internal
order and discipline and to maintain institutional security."
<u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

Having set forth the general legal principles relevant to
Plaintiff's claims, the Court now turns to the application of
those legal principles to the facts before the Court.

In his Complaint, Plaintiff alleges that he was attacked by
a fellow inmate as a result of the overcrowding and
understaffing of Fountain prison, particularly G-Dorm, where the
assault occurred.  In his pleading titled "Motion to Amend
Complaint," Plaintiff further states that Fountain officials
failed to transfer mentally ill prisoners to more appropriate
prisons, and contends that his attacker, fellow inmate Foster,
is mentally ill.  (Doc. 20 at 1-2).

In response to Plaintiff's claims, Defendant Warden
Davenport has provided an affidavit stating that he "did not
assign nor determine the institutional staffing level," and
further that "[a]n Officer is always assigned in the
dormitories."  (Doc. 14, Ex. A at 2).  Defendant Assistant

17

Warden Myers averred the same, further noting that "a review of the incident report … reveals that the Officer did respond quickly and did act within the scope of his training." (Id., Ex. B at 2).  Defendant Richardson averred that "[a]s shift commander, there was no reason for me to believe Inmate Morgan was in any danger of being assaulted, nor was I involved in the assault of Inmate Morgan." (Id., Ex. D at 2).  Defendant Gibbs likewise averred that he had no "reason to believe that Inmate Morgan would be assaulted by Inmate Foster, nor did I have any involvement in the assault other than to respond and call for assistance." (Id., Ex. E at 2).

Aside from his conclusory allegations, Plaintiff has failed to present any evidence that G-Dorm was overcrowded or understaffed at the time of this attack.  Moreover, there is also no evidence that Plaintiff was attacked by a mentally ill inmate.

Objectively, Plaintiff presents no evidence that overcrowding or a shortage of correctional officers, or the alleged presence of mentally ill prisoners in the dorm, actually posed a substantial risk of serious harm to him. Plaintiff has failed to demonstrate evidence of other acts of inmate-on-inmate violence, whether resulting from overcrowding, understaffing or housing mentally ill inmates.  Plaintiff has not established,

18

nor even alleged, that he was exposed to the "constant threat of violence" while incarcerated at Fountain, see Purcell, 400 F.3d at 1320, or to any other condition that presented "a substantial risk of serious harm." Farmer, 511 U.S. at 834; see also Hale v. Tallapoosa County, 50 F.3d 1579, 1583 (11th Cir. 1995) ("Hale produced evidence that inmate-on-inmate violence occurred regularly" in the two years preceding the attack). Plaintiff offers only self-serving conclusory statements that G-Dorm is overcrowded and understaffed and, draws his own self-serving conclusion that because of this, he was attacked by a fellow inmate. (Doc. 1 at 9-11). Although somewhat unclear, Plaintiff also appears to claim that his Eighth Amendment rights have been violated by having mentally ill inmates in G-Dorm, although he offers no evidence in support thereof. Therefore, Plaintiff has failed to satisfy the objective element of his Eighth Amendment claim.

Assuming, arguendo, that Plaintiff did satisfy the objective element of his Eighth Amendment claim, he must also show that Defendants were deliberately indifferent to the risk of serious harm to him. To meet this element, Plaintiff must prove that Defendants actually knew that a substantial risk of serious harm existed, and they "knowingly or recklessly"

declined to take action to prevent that harm.  LaMarca, 995 F.2d at 1537.

"[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  Farmer, 511 U.S. at 838.  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."  Hale, 50 F.3d at 1583 (quoting Farmer, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  Id. (quoting Farmer, 511 U.S. at 842).

In this case, Plaintiff has presented no evidence that Defendants knew of a substantial risk of serious harm to Plaintiff and were deliberately indifferent to that risk. Plaintiff has presented no evidence "that a substantial risk of inmate attacks was long-standing, pervasive, well-documented, or expressly noted by prison officials in the past."  Farmer, 511 U.S. at 842 (internal quotation marks omitted).

Moreover, Plaintiff has presented no evidence that any Defendant was aware of a risk of harm to Plaintiff from inmate Foster in particular.  In fact, it is undisputed that neither

Defendants nor Plaintiff had any prior knowledge that Plaintiff was in any danger of attack from inmate Benjamin Foster, who was solely responsible for the attack on Plaintiff on August 15, 2010.  (Doc. 14, Ex. D at 2, Ex. E at 2, Ex. F at 2).  Inmate Foster attacked Plaintiff while Plaintiff slept.  Neither Plaintiff nor Defendants had any reason to suspect Plaintiff was in danger of being attacked.

Because Plaintiff has failed to show that any of the Defendants knew that a substantial risk of serious harm existed, *i.e.*, that Plaintiff was at risk of being harmed by another inmate, and that they knowingly or recklessly declined to take action to prevent the harm, he has failed to satisfy the subjective element of his Eighth Amendment claim as well. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's action.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendants, Warden Carter Davenport, Assistant Warden Walter Myers, Captain Richard Hetrick, Sergeant Walter Richardson and Officer Kelvin Gibbs are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, that this action be dismissed with

21

prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 19th day of January, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   ***Transcript (applicable Where Proceedings Tape Recorded)***.
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        January 19, 2012

                        /s/ Katherine P. Nelson
                        **UNITED STATES MAGISTRATE JUDGE**